GEORGE SHATTUCK *vs.* JOHN ALLEN & others.

A report of the condition of the town schools, made and published as required by law, by the superintending school committee, is not libellous by reason of charging the prudential committee of one of the districts with employing a teacher and putting her in charge of a public school, in violation of law, and with taking possession of the school house, and excluding by force the general school committee and the teachers employed by them, if it does not impute corrupt motives.

*It seems,* that on the trial of an action for a libel, it is the duty of the judge to rule, upon proper motion or plea, whether the declaration sets out a cause of action, and, if he thinks it does, to define what a libel is, and leave it to the jury to determine whether the publication falls within the definition.

ACTION OF TORT by the prudential committee of the fourteenth school district of Groton for the year 1851 (who had been authorized by the town to select and contract with teachers, pursuant to *St.* 1838, *c.* 105, § 2,) against the superintending school committee of the town for that year, for an alleged libel concerning the plaintiff, and concerning him in his said office, and his conduct, doings and proceedings therein, contained in the detailed report of the condition of the schools, made to the town and published by the defendants in their official capacity, pursuant to the provisions of the statutes. Answer, that the publication (a copy of which was annexed) was not libellous, but was true, and was made in the performance of the defendants' official duty. The material parts of the publication

are copied in the margin; the passages in italics being those set
forth in the declaration.*

---

* " We wish, before we close our report, respectfully to suggest to the school
districts the importance of their selecting, for their prudential committees, those
persons who possess the highest qualifications for the discharge of their duty:
men, who will exercise a sound discretion in the introduction of persons as can-
didates for instructing the schools, and who will cordially and earnestly coöp-
erate with the superintending committee, in promoting the interests of public
instruction, and giving efficiency to those legislative enactments by which it is to
be regulated."

" Before we proceed to make any statements in reference to the unfortunate
difficulty in District No. 14, we wish it to be distinctly understood, that they are
not made for the purpose of impeaching the motives, or injuring the reputation
of the gentleman who was chosen by the district as their prudential committee,
or of any who may have sympathized with him; nor do we make them merely
for the purpose of vindicating ourselves in the measures we felt compelled to
adopt, but for the purpose of informing our fellowcitizens in respect to the prin-
ciples on which we acted, leaving it for them to judge of the propriety or impro-
priety, the legality or illegality of our conduct.

" Before, however, we proceed to a statement of the facts which gave rise to
the difference of opinion and action between the prudential committee and our-
selves, we would call your attention to the 13th and 14th sections of the 23d chap-
ter of the revised statutes, which are as follows, viz:

" ' Sect. 13. The school committee shall require full and satisfactory evidence
of the moral character of all instructors who may be employed in the public
schools in their town, and shall ascertain, by personal examination, their literary
qualifications and capacity for the government of schools.

" ' Sect. 14. Every instructor of a town or district school shall obtain of the
school committee of such town a certificate in duplicate of his qualifications,
before he opens such school; one of which shall be filed with the town treasurer,
[with the selectmen, by *St.* 1850, *c.* 115,] before any payment is made to such
instructor on account of his services.'

" *In direct and palpable violation of these plain enactments, the gentleman acting
as a prudential committee for District No.* 14 *employed a person and put her in
charge of one of its schools, without the knowledge or approval of the superin-
tending committee.*

" *On becoming acquainted with the fact that a school was opened, we sought an
interview with the prudential committee, not knowing but it might be a private school,
when we learned from his own lips that he had established it as a public school, and
that its expenses would be defrayed by the public money.* After stating to him
distinctly that we could not recognize a school, thus established, as a public
school, and as being entitled to a support from the public money; and urging

Shattuck *v.* Allen & others.

A trial was commenced before *Bigelow*, J., who made a report thereof, of which the pleadings, and the records of said town and

him in the most friendly manner, and out of regard for the laws of the State, as well as the peace and welfare of the district, to discontinue it at once, he consented to make it a matter of further consideration, and agreed to apprize us of the results to which he should arrive. Accordingly, after a few days had elapsed, he informed one of the members of the committee that he should interpose no hinderance to the continuation of the school. We then informed him that if he persisted in his determination, we should feel ourselves bound to establish such a school as would be in accordance with the laws of the Commonwealth. We also sent a respectful note to the person whom he had employed as an instructor, desiring her to relinquish her charge without delay; but it was treated with silent contempt."

" *Your committee will now call your attention to a brief outline of the state of things in District No. 14, during the winter term. Having assumed the duties of the prudential committee, we regarded it as belonging to ourselves to see that suitable persons were secured to instruct the schools; and more especially so, as the gentleman who had acted as a prudential committee gave us no intimation that he regarded himself as sustaining any official relation whatever to the district. The services of two competent instructors were accordingly obtained. On the Saturday previous to the time set for opening the schools, one of our number called on Mr. Shattuck—who still retained the keys opening the door to one of the school rooms, and also the door to the wood house—for the purpose of obtaining them. He, however, refused to deliver them. Under these circumstances, we were obliged to force the locks in order to gain admittance. This was done, and suitable preparations were made for commencing the schools. But on arriving at the schoolhouse on Monday morning with our teachers, we found the doors locked against us, and a company of men standing around the door of the wood house, for the purpose, apparently, of preventing us by force from entering that building. The doors of the schoolhouse were again opened by forcing the locks, and the teachers commenced the schools. Rather than resort to violent measures to secure fuel at this time, a supply for a day or two was obtained from another source. Ultimately, however, we were compelled to use force in entering the wood house, that the district might avail itself of the wood which had been provided for its use. And it is with feelings of regret that we are obliged to say, that, after this, repeated assaults were made on the wood house by fastening the door, until the district called a meeting, and appointed a committee to prevent, if possible, a repetition of similar acts. From the time of this meeting no similar attacks took place.*

" *It should also be stated that each of the teachers received a note from Mr. Shattuck in the early part of the term, implicitly forbidding them to enter the schoolhouse, if they would avoid the penalties threatened by law for housebreaking. The instructors, being una'armed at these implied threats, quietly persevered*

school district were made parts, and the residue of which was as follows : " After the cause was opened to the jury, it being objected that the publication was not libellous, and the court inclining to that opinion, it was withdrawn from the jury, and submitted to the whole court. If, upon a hearing of the cause, the court shall be of opinion that the action can be maintained, it shall be submitted to a jury, for the purpose of ascertaining whether the defendants were actuated by express malice, and also the amount of damages, if any ; otherwise, judgment shall be rendered for the defendants."

*B. Russell & J. G. Abbott*, for the plaintiff. 1. To maintain an action for a libel, it is not necessary that the libel should impute to the plaintiff an indictable offence. It is sufficient that it holds a party up to public scorn, contempt and ridicule. This libel charges the plaintiff with a violation of law and a breach of official duty in a matter of the greatest public consequence, and tends to bring him into contempt in the neighborhood, and is therefore actionable. *Van Ness* v. *Hamilton*, 19 Johns. 367. *Steele* v. *Southwick*, 9 Johns. 214. *Thomas* v. *Croswell*, 7 Johns. 264. *Riggs* v. *Denniston*, 3 Johns. Cas. 198. *Villers* v. *Monsley*, 2 Wils. 403. *M' Gregor* v. *Thwaites*, 3 B. & C. 24. *J'Anson*

---

*in the discharge of their duty, and the school came to a pleasant close, evincing at the examination as great a degree of progress as could be expected, considering the obstacles with which they had to contend.* As we have referred to those legislative enactments by which we have been governed in the prosecution of our duty in District No. 14, and also stated some of the most prominent obstructions thrown in the way of a faithful discharge of our official trust and of the welfare of the schools in this district, we feel it to be a privilege to submit the case, for a decision, to the good sense and intelligence of our fellow citizens. We can say with all sincerity and truthfulness, that we are not conscious of having been governed by any other considerations than those of public weal. We have had no private ends to answer, nor private piques to gratify. Contention and strife are not congenial to our tastes. For the gentlemen to whom we have alluded as having in our opinion mistaken the proper course they ought to have pursued, we entertain all that respect to which they are justly entitled. To them we are ready to tender the hand of kindness and affection. In no case do we desire to cut asunder the bonds of private friendship. But if the public welfare cannot be promoted without a sacrifice of private interests, we are ready to abandon the latter and abide by the former."

v. *Stuart*, 1 T. R. 748. *Bell* v. *Stone*, 1 Bos. & Pul. 331. *Dexter* v. *Spear*, 4 Mason, 115. *State* v. *Farley*, 4 M'Cord, 317. *Commonwealth* v. *Clap*, 4 Mass. 163. *Commonwealth* v. *Wright*, 1 Cush. 46. *Miller* v. *Butler*, 6 Cush. 71. 1 Saund. 248, *note.* Stark. Sland. (2d Amer. ed.) 168.

2. Whether the communication contained in the report was false ; and if false, and tending to defame the plaintiff, whether it was made by the defendants in good faith, acting under a belief that they were discharging a public duty, or was made maliciously, with an intention of injuring the plaintiff; are questions of fact to be submitted to the jury. *Pattison* v. *Jones*, 8 B. & C. 578. *Lancey* v. *Bryant*, 30 Maine, 466. *Miller* v. *Butler*, 6 Cush. 71.

*E. R. Hoar & E. A. Kelly*, for the defendants. 1. The words are not libellous in themselves. They do not accuse the plaintiff of any crime or immoral conduct; nor hold him out as a dishonest man ; nor blacken his reputation, nor expose him to public hatred, contempt or ridicule. *Archbishop of Tuam* v. *Robeson*, 5 Bing. 17. *Commonwealth* v. *Clap*, 4 Mass. 168. *Miller* v. *Butler*, 6 Cush. 74. 1 Saund. 248, *note.* A criticism is not a libel. *Carr* v. *Hood*, 1 Campb. 355. *Thompson* v. *Shackell*, Mood. & Malk. 187. *Soane* v. *Knight*, Mood. & Malk. 74.

2. School committees are expressly required by statute to make such suggestions, in their detailed report of the condition of the public schools, as they deem necessary or proper to promote the interests thereof. *Sts.* 1838, *c.* 105, § 1 ; 1846, *c.* 223, § 4. And abstracts of these reports are required to be laid before the legislature. *St.* 1837, *c.* 241, § 2. The publication, therefore, being made in the discharge of a public duty ; stating facts, and giving an opinion, where the law requires facts to be stated and an opinion given ; and required by, and ultimately intended for the use of, the legislature of the Commonwealth, is absolutely protected ; and no action can be maintained, unless a special action on the case, alleging not only falsity and malice, but want of probable cause. Stark. Sland. 239, 254. *Brook* v. *Montague*, Cro. Jac. 90. *Hodgson* v. *Scarlett*, 1 B. & Ald.

232. *Hoar* v. *Wood*, 3 Met. 197, 198, and cases cited. *Commonwealth* v. *Blanding*, 3 Pick. 314, 315. *Jekyll* v. *Moore*, 2 New Rep. 341. *Lake* v. *King*, 1 Saund. 131, 1 Lev. 240, 2 Keb. 832, and 1 Sid. 414. *Cutler* v. *Dixon*, 4 Co. 14. *Rex* v. *Bayley*, Bac. Ab. Libel, A. 2, and 5 B. & Ald. 647, 648. *Oliver* v. *Bentinck*, 3 Taunt. 456. *Thorn* v. *Blanchard*, 5 Johns. 508. *Gray* v. *Pentland*, 2 S. & R. 23.

*Abbott*, in reply, suggested that the question of libel or **no** libel should have been submitted to the jury.

THOMAS, J. The objections to the maintenance of this action rest upon two grounds; first, that the matter itself is not libellous; and secondly, that it was a publication, made in the course and in the discharge of a public duty, required by the statutes of the Commonwealth, for the use of the town, and ultimately of the legislature itself, and so far under the protection of the law, that for it no action can be maintained, except an action on the case, alleging not only falsity and malice, but want of probable cause.

The declaration sets forth extracts from the report, the meaning and force of which cannot be fully understood when separated from their context; yet upon the face of the declaration it is difficult to see any libellous matter. It is not contended, that the words set out charge the plaintiff with the commission of any crime; nor is this necessary. Nor do they charge him with immoral conduct, or impute to him unjust or corrupt motives in his official action, or hold him out as a dishonest man, or blacken his reputation, or expose him to public hatred, contempt or ridicule.

Reading the extracts set out in the declaration, in their connection with the other portions of the report, annexed to the defendant's answer, and made part of the case, taking the whole publication together, the question is free from difficulty. The plaintiff is spoken of only in the conduct of his office, and in this regard there is no imputation of corrupt or improper motives. So far as the plaintiff is implicated in the transactions narrated, or the comments upon them, the most that can be said is, that in the view of the committee he had very mistaken conceptions

46 *

of his legal duty, and adhered to and acted upon them with great pertinacity.

As we are all of opinion that the action must fail upon this ground, it has not been necessary to determine the extent of privilege, unquestionably large, to which this class of publications is in law entitled.

It was suggested in the closing argument of the plaintiff's counsel that the question of libel or no libel should have been sent to the jury. This question does not appear to have been made at the trial, or reserved in the report. The recent practice in England, in civil as well as criminal cases, seems to be to leave to the jury the question whether the matter is libellous or not. In the case of *Baylis* v. *Lawrence*, 11 Ad. & El. 920, it was held no misdirection in Lord Abinger to have said to the jury, " I own I find a difficulty in saying whether it is a libel or not. Gentlemen, can you assist me ? " without defining what constituted a libel, and without any other direction upon that issue.

Yet it is clear that upon a demurrer, or an answer in the nature of one, the court must determine whether a cause of action is set out in the declaration, to be sent to the jury. And if the judge presiding at the trial, and the jury, should think the publication libellous, still, if on the record it appear to be not so, judgment must be arrested. And so the law is distinctly laid down in *Baylis* v. *Lawrence*. The true distinction proba bly is, that though the court will, upon proper motion or plea ot the defendant, judge whether the publication, as set out, constitutes a ground of action or not, yet, if such demurrer or motion is overruled, and the cause goes to the jury, the judge is to define what is a libel, and leave to the jury to determine whether the publication falls within the definition of the offence. See *Parmiter* v. *Coupland*, 6 M. & W. 105.

These suggestions may possibly reconcile expressions in the text books and in the reports apparently conflicting.

*Judgment for the defendants.*